UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROZENNA NAZIA ALI,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

CASE NO. 2:26-cv-03599-LK

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner Rozenna Nazia Ali's petition for writ of habeas corpus. Dkt. No. 1. For the reasons set forth below, the Court denies the petition.[1]

## I. BACKGROUND

Ali is a native and citizen of Fiji. Dkt. No. 8 at 2. On December 28, 2021, Ali was admitted into the United States in Newark, New Jersey as a nonimmigrant F-1 Student to attend Moody Bible Institute in Chicago, Illinois. *Id.*; Dkt. No. 2 at 14–29. She earned a Bachelor of Arts in Biblical Studies in December 2022. Dkt. No. 1 at 3. Following her graduation, she obtained authorization for post-completion Optional Practical Training. *Id.*; Dkt. No. 2 at 31–32, 39. United States Citizenship and Immigration Services ("USCIS") approved her application for an

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

employment authorization card (form I-765) on January 19, 2023. Dkt. No. 8 at 2; Dkt. No. 2 at 36. Ali's I-765 card expired on February 13, 2024. Dkt. No. 8 at 2.

DHS records reflect that Ali was enrolled in a graduate-level Moody Bible Institute program beginning on January 8, 2024. Dkt. No. 1 at 3. On March 9, 2024, she was terminated in the Student and Exchange Visitor Information System ("SEVIS") as "NO SHOW – SYSTEM TERMINATION." Dkt. No. 8 at 2. "Record checks" indicated that Ali did not re-apply to the Moody Bible Institute, or any other educational institution. *Id.* On April 22, 2024, Ali's father filed a Petition for Alien Relative, I-130, with USCIS. *Id.*[2] The application remains pending. *Id.*

On June 17, 2026, Homeland Security Investigations ("HSI") agents and Enforcement and Removal Operations ("ERO") officers "were notified that [Ali] was at a local hotel in Allison, Iowa." Dkt. No. 8 at 2.[3] Some officers began surveillance at the hotel, while others went to Ali's last known address as indicated in SEVIS, where they located her parents and sister. *Id.* Ali's father initially told officers that he did not know where she was, but later "agreed to assist officers after being informed that officers were aware of [Ali's] location at the hotel." *Id.* Ali's father "was planning on leaving for Ohio that evening and it appeared he would be taking [Ali] with him in an effort to evade arrest." *Id.* Ali was served a Warrant for Arrest of Alien, I-200, and taken into custody and transported to the ICE Office in Cedar Rapids, Iowa. *Id*.

On June 17, 2026, Ali was granted voluntary departure, signed a Voluntary Departure and Verification of Departure form, and was transferred to ERO El Paso Camp East Montana in El Paso, Texas. *Id.* at 3; Dkt. No. 7-3. ERO requested Ali's passport by June 19, 2026 to facilitate her

---

[2] Ali contends that her failure to maintain her F-1 status was due to her belief that after her father filed the I-130, she did not need to take any additional steps to extend or otherwise maintain her F-1 status. Dkt. No. 1 at 4.

[3] Respondents filed a "Notice of Erroneous Filing" indicating that "attachments to [their] Return Memorandum at Dkt. Nos. 6-1 through 6-8 . . . should be disregarded." Dkt. No. 10 at 1. Respondents contend that these exhibits "were subsequently correctly filed as attachments to the Lee Decl. at Dkt. Nos. 7-1 through 7-8[.]" *Id.* However, the documents filed at Dkt. Nos. 7-1 and 7-2 are not related to Ali. *See* Dkt. Nos. 7-1, 7-2.

departure, but Ali did not provide it. Dkt. No. 8 at 3.

On June 24, 2026, ERO issued and served Ali with a Notice to Appear, charging her as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") because she remained in the United States for a time longer than permitted. *Id.*; Dkt. No. 7-4 at 2. ERO also issued and served Ali with a Notice of Custody Determination (form I-286). Dkt. No. 8 at 3; Dkt. No. 7-5 at 2. The Notice of Custody Determination indicates that Ali was to be detained and that she did not request an IJ to review her custody determination, but Ali refused to sign the document. *Id.* On June 30, 2026, Ali, through counsel, requested a custody redetermination hearing. Dkt. No. 1 at 6. On July 9, 2026, Ali appeared for a bond hearing before the Omaha Immigration Court. Dkt. No. 8 at 3. An immigration judge ("IJ") denied bond, finding that Ali was a flight risk. *Id.*; Dkt. No. 7-7 at 2. Ali did not appeal the IJ's order. Dkt. No. 8 at 3.

On July 19, 2026, Ali was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* On July 22, 2026, Ali filed a Motion to Reconsider Bond with the Tacoma Immigration Court. *Id.* On July 30, 2026, an IJ denied Ali's motion because "[t]he motion for a bond redetermination by another Immigration Judge is insufficient to meet the moving party's burden." Dkt. No. 7-8 at 2. On September 15, 2026, Ali filed an application for relief from removal to Fiji with the Tacoma Immigration Court. Dkt. No. 8 at 3. Ali was scheduled to appear for an individual hearing at the Tacoma Immigration Court on October 27, 2026. *Id.*

On September 24, 2026, Ali filed a petition for writ of habeas corpus. Dkt. No. 1. Ali argues her detention is a violation of the Due Process Clause of the Fifth Amendment and seeks immediate release. *Id.* at 22. Respondents[4] filed a response on October 9, 2026. Dkt. No. 6. Ali filed a traverse on October 14, 2026. Dkt. No. 11.

---

[4] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he

## II. DISCUSSION

Ali argues that the IJ issued "a bond determination that is arbitrary, conclusory, reflective of an abuse of discretion, and devoid of any reasoned or individualized analysis and unsupported by the record." Dkt. No. 1 at 1. She requests that the Court order her immediate release. *Id.* at 22.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The

may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

Fifth Amendment guarantees due process in deportation proceedings." *Torres Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. The IJ Did Not Abuse His Discretion**

Even assuming without deciding that prudential exhaustion should be waived here, the IJ did not abuse his discretion. Ali argues that the IJ's custody determination at the July 9, 2026 bond hearing "constituted an abuse of discretion because both the bond hearing and the resulting written decision failed to provide the individualized, reasoned analysis required by due process." Dkt. No. 1 at 9. She also contends that at the hearing, "[t]he IJ did not meaningfully address or weigh [her] substantial positive equities in his decision," and that the *Guerra* factors favor her release. *Id.* at 10–11.

Respondents argue that the IJ "considered the charges underlying [Ali]'s detention, the timeline of events, and the circumstances of arrest, and . . . ultimately found that the risk of flight warranted [Ali]'s continued detention." Dkt. No. 6 at 7. Respondents contend that Ali "cannot credibly argue that the [IJ]'s decision was 'unreasonable' in this matter." *Id.*

In general, the Court does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

However, Section 1226(e) does not "strip federal courts of 'traditional habeas jurisdiction.'" *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). In other words, Section 1226(e) "precludes federal courts from reviewing 'underlying factual determinations'" such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]" Id. at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Id.* at 785 (citation modified).

1. <u>The IJ's Decision</u>

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ "may" weigh "any or all" of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the

above standard is a reviewable mixed question of fact and law, even though what constitutes a risk of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1077–78 (W.D. Wash. 2026) (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1102 (W.D. Wash. 2026) (same). Accordingly, Ali's allegation in her habeas petition—that the IJ abused his discretion when he found that Ali was a flight risk—presents a mixed question of fact and law that the Court has jurisdiction to review.

2. The IJ Did Not Abuse His Discretion

The IJ's written bond denial decision, issued on July 9, 2026, consists of a checkbox form indicating that Ali is a flight risk. Dkt. No. 7-7 at 2. Ali focuses on the written form and notes that it contains "no factual findings, no legal analysis, and no explanation of the basis for the flight risk determination." Dkt. No. 1. at 13. However, the hearing was recorded, and Respondents filed a copy of the 23-minute audio recording with the Court. Dkt. Nos. 7-6, 9. The audio recording demonstrates that the IJ heard the evidence presented and provided an oral decision. Dkt. No. 7-6 (audio recording of the July 9, 2026 bond hearing). During the hearing, Ali testified that although she was living with her family in Allison, Iowa at the time of her arrest, she was staying at a hotel "just down the road" in Allison. Dkt. No. 7-6 at 6:14–6:47. Her counsel examined her and presented argument regarding the mitigating evidence she filed with the immigration court. *See generally* Dkt. No. 7-6. The IJ explained why he found that Ali was a flight risk:

> The Court is seriously concerned about the actions taken that night [of Ali's arrest], as reflected to the I-213. And although [Ali] denies it, the Court has also serious

> concerns that [Ali] is not being forthright as to just clearing her head and just going to a hotel room and then having her father pay for it[.]

Dkt. No. 7-6 at 14:09–33. The IJ also noted concerns about "whether or not [Ali] ever attended . . . the program that she said, and got a visa for, that she was going to attend, which was that masters program." *Id.* at 14:44–59. The IJ further explained that "as indicated by the I-213, which the Court gives weight to, it appears from the parties that [Ali] was prepared to abscond." *Id.* at 16:00–14. The IJ also recognized Ali's connection to her family: "As far as her family ties . . . that is not helpful in this case, because it appears to the Court that her family were evading or assisting in evading law enforcement by lying to the immigration officers that attended." *Id.* at 16:16–37. And the IJ further considered the other factors that Ali argues weigh in her favor: "The Court doesn't see how, even after considering her family ties, possible visa or adjustments or status that she can gain from her family members, as her not being a flight risk." *Id.* at 17:41–18:03. Based on these factors, the IJ explained that "the Court is not convinced that any amount of money will mitigate [the flight risk finding]." *Id.* at 18:04–11. These considerations provided a legally sufficient basis to deny bond.

Ali argues that her bond determination is arbitrary because no written decision was issued and she "remain[s] detained following a custody determination that provides no explanation of why the evidence before the IJ warranted continued incarceration rather than release on bond or appropriate conditions." Dkt. No. 1 at 8; *see* Dkt. No. 11 at 3–4. IJs typically render oral decisions in bond proceedings, and prepare a written decision only "[i]f either party appeals" the bond decision. Immigration Court Practice Manual ch. 8.3(e)(7), *available at* https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-8-3; *see also Trujillo Vazquez v. Scott*, No. 2:26-CV-01742-LK, 2026 WL 2449430, at *6 (W.D. Wash. Aug. 3, 2026). Because Ali did not appeal her bond determination, *see* Dkt. No. 8 at 3, no written decision was

prepared. However, as discussed above, the IJ orally provided a thorough explanation of his custody determination.

Ali also argues in her traverse that the IJ's finding that she evaded law enforcement rested on speculation rather than evidence of her intent and that any evidence of flight risk should have been attributed to Ali's family, not her. Dkt. No. 11 at 5–6. However, under abuse of discretion review, the Court "cannot reweigh evidence," and instead determines whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 785 (citation modified). At the July 9, 2026 bond hearing, the IJ weighed the relevant *Guerra* factors and found Ali to be a flight risk. Dkt. No. 7-6 at 14:09–33. The Court does not reweigh the evidence, and finds that the IJ applied the correct legal standard and determined that Ali was a flight risk based on permissible considerations. *See Valenzuela v. Semaia,* Case No. 5:25-cv-02853-SSS-RAO, 2025 WL 4041920, at *2 (C.D. Cal. Dec. 10, 2025) ("Although Petitioner may disagree with the outcome of the IJ's determination at the bond hearing, this Court does not have jurisdiction to sit as an appellate body over this issue.").

## III. CONCLUSION

For the foregoing reasons, the Court DENIES the petition for a writ of habeas corpus. Dkt. No. 1.

Dated this 24th day of November, 2026.

Lauren King
Lauren King
United States District Judge